# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CECILIA RODRIGUEZ CONTRERAS,** | ) NO. CV 17-1093-KS |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION AND ORDER** |
| **NANCY A. BERRYHILL**, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## INTRODUCTION

CECILIA RODRIGUEZ CONTRERAS ("Plaintiff") filed a Complaint on February 10, 2017, seeking review of the denial of her applications for Supplemental Security Income ("SSI") and disability insurance benefits ("DIB"). (Dkt. No. 1.) The parties have consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11-13.) On February 21, 2018, the parties filed a Joint Stipulation. (Dkt. No. 26 ("Joint Stip.").) Plaintiff seeks an order reversing the Commissioner's decision and ordering the payment of benefits or, in the alternative, remanding for further proceedings. (Joint Stip. at 18-19.) The Commissioner requests that the ALJ's decision be

1

affirmed or, in the alternative, remanded for further proceedings. (*Id.* at 19-20.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On April 22, 2013, Plaintiff, who was born on January 27, 1958, filed applications for SSI and DIB. (Administrative Record ("AR") 32, 262-75.) Plaintiff alleged disability commencing on November 11, 2010 due to a heart problem, diabetes, high blood pressure, heart palpitations, heart surgery, a back injury, a fungal infection, a urinary tract infection, and lumbago. (AR 72, 88.) After the applications were denied initially (AR 104-05) and on reconsideration (AR 146-47), Plaintiff requested a hearing (AR 165-66). At a hearing held on July 8, 2015, at which Plaintiff appeared with counsel, an Administrative Law Judge ("ALJ") heard testimony from Plaintiff and a vocational expert. (AR 45-71.) On August 12, 2015, the ALJ issued an unfavorable decision denying Plaintiff's applications for SSI and DIB. (AR 32-39.) On December 13, 2016, the Appeals Council denied Plaintiff's request for review. (AR 1-3.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date and had the following severe impairments: degenerative disc disease, diabetes mellitus, hypertension, obesity, and degenerative changes of the right knee. (AR 34.) The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in the Commissioner's Listing of Impairments. (AR 36.) The ALJ found that Plaintiff had the residual functional capacity ("RFC") to lift 10 pounds frequently and 20 pounds occasionally, stand and/or walk six hours in an eight-hour workday, occasionally kneel and squat, and sit with no limitations. (AR 36.) The ALJ found that Plaintiff was capable of performing her past relevant work as a

hand cutter, as that occupation is generally performed in the national economy. (AR 38.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.*)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (citation omitted).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at

3

630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

**DISCUSSION**

Plaintiff alleges the following two errors: (1) the ALJ failed to properly consider the opinion of an examining psychologist, who limited Plaintiff to simple, repetitive tasks; and (2) the ALJ erred in determining that Plaintiff could perform her past relevant work as a hand cutter because evidence in the record demonstrated she must avoid hazards. (Joint Stip. at 4.)

As discussed below, the Court concludes that these issues do not warrant reversal of the ALJ's decision.

**I.   Examining Psychologist's Opinion (Issue One)**

In Issue One, Plaintiff contends that the ALJ failed to properly consider the opinion of the examining psychologist, Dr. Betty Borden, who purportedly limited Plaintiff to work involving simple, repetitive tasks. (Joint Stip. at 4-6, 14.)

**A.   Applicable Law**

A claimant's RFC represents the most a claimant can do despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945 (a)(1); *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998). An ALJ's RFC determination "must set out *all* the limitations and restrictions of the

particular claimant." *Valentine v. Comm'r SSA*, 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original).

The Commissioner will assess a claimant's residual functional capacity "based on all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling ("SSR") 96-8P, 1996 WL 374184, at *7.

Before rejecting the uncontradicted opinion of an examining physician, an ALJ must provide "clear and convincing" reasons. Where the examining physician's opinion is contradicted by that of another doctor, the ALJ must provide "specific and legitimate" reasons that are supported by substantial evidence in the record. *See, e.g., Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Regennitter v. Comm'r of SSA*, 166 F.3d 1294, 1298-99 (9th Cir. 1999); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995); *Andrews*, 53 F.3d at 1041. Here, the opinion of the examining psychologist, Dr. Borden, was uncontradicted by any other medical opinion in the record. Thus, the ALJ was required to provide clear and convincing reasons to reject Dr. Borden's opinion.

**B.  Background**

In March 2014, Dr. Borden completed a psychological evaluation of Plaintiff that included a clinical interview and objective testing. (AR 1209-12.) Dr. Borden noted that Plaintiff had attended one counseling session six months earlier but had not returned for further treatment. (AR 1210.) During the evaluation, Dr. Borden repeatedly commented that Plaintiff did not make a full effort. (AR 1211 ["The claimant had to be encouraged to

set forth better effort on tasks as the claimant would often state that she could not perform tasks"]; *Id.* ["The claimant needed encouragement to answer questions and to set forth adequate effort on tasks."]; *Id.* at 1212 ["She appeared to be setting forth less than adequate effort [on] tasks. Present score not valid."]; *Id.* ["The claimant appeared to be attempting to exaggerate her level of impairment. She needed to be encouraged to set forth effort on tasks."].) Dr. Borden diagnosed Plaintiff with an "Adjustment Disorder with Depression Versus Major Depressive Disorder, Single Episode, Mild." (AR 1212.) Finally, Dr. Borden concluded that Plaintiff's functioning level was as follows:

> The claimant probably has moderate impairment in the area of social functioning. She would have difficulty interacting with the general public, but should be able to interact with supervisors and coworkers. The claimant has moderate restrictions in the area of concentration, persistence and pace. The claimant is able to perform simple repetitive tasks, but would have some difficulty completing detailed and complex tasks. The claimant is able to perform basic activities of daily living. There is no evidence of impairment in maintaining emotional composure. There is no history of psychiatric treatment, except for one counseling session.

(AR 1212.)

**C. Analysis**

The ALJ rejected Dr. Borden's opinion, to the extent Dr. Borden recommended any significant mental restrictions, for two reasons. (AR 38.)[1] The ALJ's first reason was that

---

[1] The ALJ articulated a third reason, about the limited evidentiary value of a Global Assessment of Functioning score, which applied to a different mental health evaluation that is not raised as an issue here. (AR 38; *see also* AR 1099.)

6

"the record does not document persistent mental symptoms or any ongoing mental health treatment." (AR 38.) An ALJ may properly reject an examining physician's opinion on this basis. *See King v. Comm'r of SSA*, 475 F. App'x 209, 210 (9th Cir. 2012) (holding that an ALJ's rejection of an examining physician's opinion because of "the absence of mental health treatment records" was a clear and convincing reason); *see generally Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that an ALJ may reject an examining physician's opinion "for lack of objective support"); *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 603 (9th Cir. 1999) (an ALJ may reject an examining physician's opinion as unreasonable given "other evidence in the record"); *Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1195 (9th Cir. 2004) (noting an ALJ may reject any medical opinion that is unsupported by the record as a whole or objective medical findings).

As the ALJ found, Dr. Borden's opinion was inconsistent with the record which lacks evidence of persistent mental symptoms or any ongoing mental health treatment. Although Plaintiff points out that she displayed mental symptoms during other treatment sessions (Joint Stip. at 5), the sessions were not for mental health treatment (AR 1166, 1173, 1181, 1204) and therefore do not negate the ALJ's finding that Plaintiff did not have ongoing mental health treatment. Indeed, the voluminous record contains almost no evidence of mental symptoms. Plaintiff first began complaining of mental symptoms in July 2013 (AR 1204), long after Plaintiff's alleged onset date of November 2010. *Cf. Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200 (9th Cir. 2008) (finding error in the ALJ's rejection of an examining psychiatrist's opinion where the claimant had consistently complained of mental symptoms during most of her visits with her treating physician before the examination). The record on the whole therefore supports the ALJ's reasoning that Dr. Borden's opinion was unsupported.

//

//

//

Plaintiff further challenges this reason by pointing out it is a "questionable practice" to blame a mentally ill person for failing to obtain mental health treatment. (Joint Stip. at 5.) The Ninth Circuit has recognized that "the fact that [a] claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis" on which to conclude that a physician's assessment is inaccurate. *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). *Van Nguyen* is distinguishable from the instant case because, here, the record amply demonstrates that Plaintiff was capable of seeking treatment when she felt it was necessary. The voluminous medical record reflects that Plaintiff sought and received treatment over several years for various conditions including diabetes, hypertension, anemia, recurrent fungal infections, recurrent urinary tract infections, hyperlipidemia, fatty liver, congestive heart failure, lumbago, melasma, and diabetic retinopathy. (AR 692.) Nothing in the record suggests that Plaintiff had a mental impairment that prevented her from seeking the appropriate treatment. District courts have repeatedly rejected a claimant's reliance on *Van Nguyen* under these circumstances. *See, e.g.*, *Campbell v. Comm'r of Soc. Sec.*, 2018 WL 1010205, at *9 (E.D. Cal. Feb. 20, 2018) ("However, this is not a situation where Plaintiff was unaware of her potential mental illness or any failure to secure mental health treatment was attributable to her mental illness."); *Acosta v. Berryhill*, 2017 WL 1090160, at *5 (E.D. Cal. Mar. 22, 2017) ("However, Plaintiff has not cited any evidence suggesting that he was unaware of his potential mental illness or that his failure to secure mental health treatment was attributable to his mental illness rather than his own preference."); *Bondarenko v. Colvin*, 2014 WL 4198853, at *5 (E.D. Wash. Aug. 22, 2014) ("Nor does evidence exist that her failure to seek treatment was attributable to her mental impairment rather than her own personal preference."); *Judge v. Astrue*, 2010 WL 3245813, at *4 (C.D. Cal. Aug. 16, 2010) ("[Plaintiff] understood that she could access therapy if she needed it and knew where to go to get it."). For the same reasons, Plaintiff's invocation of a mental illness to explain the absence of any ongoing mental health treatment is insufficient to invalidate the ALJ's evaluation of the examining psychologist's opinion.

Plaintiff further challenges this reason by contending that she lacked the resources to obtain mental health treatment. (Joint Stip. at 6.) The Ninth Circuit has held that a claimant should not be penalized for failing to obtain treatment he or she cannot afford. *See Regennitter*, 166 F.3d at 1299-1300. Here, however, Plaintiff had state-provided medical insurance. (AR 851.) Even if Plaintiff may have had some doubts about whether her insurance covered mental health treatment, nothing prevented her from verifying her coverage for that service by actually requesting it. Indeed, the record shows that Plaintiff and her physicians did request other types of treatment when it was considered necessary: on numerous occasions, Plaintiff's physicians completed evaluations and requested insurance coverage for services such as dermatology (AR 741, 769), eye exams (AR 742, 754, 763), gynecological exams (AR 747, 753, 758), a routine medical exam (AR 749), a mammogram (AR 751, 755), cardiovascular exams (AR 762, 776, 788), and heart treatment (AR 766). Nothing in the record suggests that Plaintiff similarly requested and was denied coverage for mental health treatment. Thus, Plaintiff's alleged lack of resources does not undermine the ALJ's reasoning that the record is devoid of evidence of ongoing mental health treatment. *See Fisher v. Astrue*, 429 F. App'x 649, 651 (9th Cir. 2011) (rejecting claimant's reasoning that financial difficulties explained gaps in her mental health treatment when she had been aware of her insurance coverage for several years and had seen multiple doctors who had prepared evaluations for her).

The ALJ's second reason to reject Dr. Borden's opinion was that, "[m]ore strikingly," Dr. Borden had referred "to dubious effort on testing and possible symptoms exaggeration." (AR 38.) An ALJ may properly reject an examining physician's opinion on this basis. *See Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (holding that an ALJ properly rejected an examining psychologist's opinion that was irreconcilable with the psychologist's written report and the claimant's test scores upon examination); *see generally Morgan*, 169 F.3d at 603 (noting that an examining physician's opinion can be rejected for "internal inconsistencies"); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992)

9

(noting that an examining physician's opinion can be properly rejected when the examination "revealed very minimal abnormal findings"); *Andrews*, 53 F.3d at 1043 (noting that an examining psychologist's opinion can be discounted when the claimant's presentation at that examination was "unreliable" due to substance abuse). Based on Dr. Borden's repeated observations of Plaintiff's lack of adequate effort during testing, thereby invalidating one of Plaintiff's test scores, the ALJ had a convincing basis to doubt that Dr. Borden could reach an informed conclusion about Plaintiff's level of functioning.

Plaintiff contends that this reason was legally insufficient because it should be presumed that Dr. Borden's assessment of Plaintiff's limitations took full account of Plaintiff's lack of effort during testing. (Joint Stip. at 5.) But Dr. Borden's opinion is silent as to whether she actually made that accounting and, thus, the opinion is susceptible to different interpretations. It can be interpreted that Dr. Borden accounted for Plaintiff's lack of effort, as Plaintiff contends, or it can be interpreted that Dr. Borden improperly ignored Plaintiff's lack of effort, consistent with the ALJ's reasoning. Because the ALJ made a rational interpretation of an ambiguous opinion, it must be upheld. *See Morgan*, 169 F.3d at 601 (holding that an ALJ's rejection of an examining psychologist's opinion must be upheld when the evidence undermining the opinion was susceptible to more than one rational interpretation).

In sum, the ALJ provided two clear and convincing reasons to reject Dr. Borden's opinion. But even if Plaintiff is correct that the ALJ's reasons were unsupported by substantial evidence or were legally erroneous, such an error would be harmless because it would be inconsequential to the ultimate nondisability determination. *See Molina*, 674 F.3d at 1117. When an ALJ fails to properly consider medical opinion evidence, the reviewing court may find the error harmless if "it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."

10

*Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)).

Here, even if Dr. Borden's opinion was fully credited, it would not have disturbed the ALJ's conclusion at step four that Plaintiff could perform her past relevant work as a hand cutter I as that occupation is generally performed in the national economy. *See* DOT 781.684-074. Plaintiff appears to contend that Dr. Borden's limitation of Plaintiff to simple, repetitive tasks raised an apparent conflict with the DOT's requirement that a hand cutter I must be able to perform at Reasoning Level 3. *See Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (holding that a limitation to simple, repetitive tasks is inconsistent with the demands of Level 3 reasoning). However, Plaintiff's premise that Dr. Borden limited her to simple, repetitive tasks is incorrect.

Although Dr. Borden did state that Plaintiff was "able to perform simple repetitive tasks," she also stated that Plaintiff "would have some difficulty completing detailed and complex tasks." (AR 1212.) Having "some difficulty" in completing detailed and complex tasks is not the same as being precluded from performing such tasks altogether. Even a *moderate* difficulty in performing detailed and complex tasks would not have precluded Plaintiff from performing more than simple, repetitive work, i.e., work requiring Reasoning Level 3 or above. *See Valentine*, 574 F.3d at 691 (holding that a psychologist's recommendation that a worker with a moderate limitation in carrying out detailed instructions be limited to simple work did not mean that the psychologist limited the worker to only simple work). Thus, because the examining psychologist's opinion is reconcilable with the ALJ's step four determination, any error in evaluating that opinion would have been inconsequential to the ultimate nondisability determination.

//

//

//

## II. Plaintiff's Past Relevant Work (Issue Two)

In Issue Two, Plaintiff contends that the ALJ erred in determining that she could perform her past relevant work as a hand cutter I because the record showed she must avoid exposure to hazards, a condition of the hand cutter occupation. (Joint Stip. at 15-16, 18.)

### A. Applicable Law

"At step four, claimants have the burden of showing that they can no longer perform their past relevant work." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). The ALJ still has a duty at step four to make specific findings as to the claimant's residual functional capacity ("RFC"), the physical and mental demands of the past relevant work, and the relation of the RFC to the past work. *Id*. at 845.

The ALJ may take the testimony of a vocational expert ("VE") to find that a claimant can or cannot continue her past relevant work. *Pinto*, 249 F.3d at 845. However, the Dictionary of Occupational Titles ("DOT") is the Commissioner's "primary source of reliable job information" and creates a rebuttal presumption as to a job classification. *Johnson v. Shalala*, 60 F.3d. 1428, 1434 n.6, 1435 (9th Cir. 1995); *see also Tommasetti v, Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008). An ALJ will ask the VE if his testimony is consistent with the DOT and "obtain a reasonable explanation for any apparent conflict." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (citing Social Security Ruling 00-4p). In sum, at step four, "[i]n order for an ALJ to accept vocational expert testimony that contradicts the Dictionary of Occupational Titles, the record must contain 'persuasive evidence to support the deviation.'" *Pinto*, 249 F.3d at 846 (quoting *Johnson*, 60 F.3d at 1435).

//
//

**B.     Analysis**

Two state agency physicians, Dr. Williams and Dr. Hanna, each stated that Plaintiff must avoid all exposure to hazards. (AR 85, 101, 123, 143.) Without explanation, the ALJ did not incorporate this limitation into the RFC determination. (AR 36.) The ALJ then accepted the testimony of the VE that a person with Plaintiff's RFC could perform her past relevant work as a hand cutter, as that occupation is generally performed in the national economy. (AR 38.) Plaintiff contends that the ALJ erred by disregarding the state agency physicians' preclusion from hazards because that condition is present in the occupation of hand cutter I, as described in DOT 781.684-074.

As an initial matter, the state agency physicians' opinions were unsupported by any other physician who actually examined or treated Plaintiff. The opinions of non-examining physicians, such as state agency physicians, cannot constitute substantial evidence unless they are consistent with other evidence in the record. *See Lester*, 81 F.3d at 831; *see also Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (holding that a non-examining physician's opinion plus the ALJ's personal observations of the claimant together were not substantial evidence to support the ALJ's conclusions). Because no examining or treating physician concurred with the state agency physicians that Plaintiff must avoid all exposure to hazards, the ALJ arguably had no duty to explain why he did not accept that limitation. *See Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985) (holding that an ALJ "was not obliged to explicitly detail his reasons" for rejecting a psychological opinion with which no other doctor concurred).

In any event, even assuming that the ALJ erred in ignoring the state agency physicians' opinions, this error would have been inconsequential to the ultimate nondisability determination. *See Molina*, 674 F.3d at 1117. Even if the state agency physicians' opinions precluding Plaintiff from any exposure to hazards were fully credited

and incorporated into the RFC determination, it would not have precluded the ALJ from finding that Plaintiff could perform her past relevant work as a hand cutter I as it is generally performed in the national economy. According to the Selected Characteristics of Occupations, the Commissioner defines "hazards" in the DOT as including "moving mechanical parts of equipment, tools, or machinery; electrical shock; working in high, exposed places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals." SSR 96-9P, 1996 WL 374185, at *9. Each of these conditions is listed as "not present" for the occupation of hand cutter I. *See* DOT 781.684-074. Thus, Plaintiff's past relevant work, as it is generally performed in the national economy, did not include any of the conditions listed in the Commissioner's own definition of hazards. Furthermore, nothing in Plaintiff's hearing testimony about her past relevant work indicated that the occupation as she *actually* performed it involved "hazards" either. (See AR 49-51.)

Plaintiff contends, however, that the occupation of hand cutter I requires exposure to hazards because the worker must perform tasks with dangerous instruments, particularly a sharp knife. (Joint Stip. at 15, 18.) According to the DOT, the occupation of hand cutter I requires the worker to use scissors, a knife, and a hot-wire device in order to cut, shape, or trim materials. *See* DOT 781.684-074. But these types of tools are common to many occupations and are not so dangerous that they fall within the Commissioner's definition of "hazards." Other district courts have repeatedly rejected the argument that "hazards" is such a broad term that it includes common tools, even those with sharp blades such as knives. *See, e.g.*, *Montez v. Berryhill*, 2018 WL 345817, at *3 (W.D. Wash. Jan. 10, 2018) ("The [Selected Characteristics of Occupations] does not indicate that the use of a slicing machine, knives or cutters constitutes exposures to hazards."); *Holloway v. Colvin*, 2013 WL 3929778, at *6 (D. Or. Jul. 29, 2013) ("A polishing wheel and knife are not hazardous machinery. . . ."); *Peterson v. Astrue*, 2011 WL 1131495, at *4 (D. Or. Mar. 2, 2011) (declining to define "hazards" to include metal punches, hammers, branding irons, paper cutters, and razor knives); *Phonn v. Astrue*, 2010 WL 2850768, at *3 (C.D. Cal. Jul. 20,

2010) ("A knife is a tool; it is not a hazardous machine."); *see also Setzer v. Colvin*, 2016 WL 8229025, at *4 (W.D. NC Nov. 17, 2016) (finding unconvincing claimant's argument that the occupation of hand cutter I requires exposure to hazards by virtue of exposure to scissors and knives); *Baker v. Soc. Sec. Admin. Comm'r*, 2011 WL 1298694, at *7 (D. Me. Mar. 31, 2011) (declining to define hazards to include common tools such as "knives and other blades, fryers, meat grinders, pots of scalding water, errant mop buckets, or even swinging doors"). The Court finds these decisions to be persuasive authority. Accordingly, Plaintiff has not shown that her past relevant work involved exposure to hazards so as to raise an apparent conflict with the DOT.

## CONCLUSION

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted. Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: May 30, 2018

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE